Next case is Link Motion Inc. v. DLA Piper LLP Mr. Maloney, I see you reserve two minutes for rebuttal and you can begin whenever you're ready. Good morning. May it please the Court, my name is Michael James Maloney on behalf of Plaintiff Appellant Link Motion Inc. Plaintiff Appellant here seeks reversal of two decisions and orders of the District Court. One, denying Link Motion's motion to remand. And one, dismissing Link Motion's malpractice complaint is untimely. Federal courts are courts of limited jurisdiction and the District Court here stepped outside the boundaries of its jurisdiction when it declined to remand this case back to State Court. You agree that Grable Gun Test applies to this analysis, right? That is correct, Your Honor. So why isn't it a substantial question in federal law if the malpractice would essentially conclude, if you were to prevail, that a receivership order issued by a federal judge was invalid? Why doesn't that create a substantial question that would allow it to stay in federal court? Isn't that really what, for you to prevail, it would have to be that that was an invalid, District Court had no authority to issue that order. That would have to be the conclusion in the malpractice action, right? That is not accurate, Your Honor. The reason is because the malpractice action is backward looking and asks only a hypothetical question. What would the District Court have decided if Link Motion's defenses had been presented- I note that here because after the L.I. Piper left the case, the magistrate judge and then the District Court adopted, looked at the issue. It was litigated of whether or not there was authority or notwithstanding, you can correct me if I'm wrong, and the court said, no, we got it right. So essentially all the things that you think the L.I. Piper should have argued were argued and lost, right? That's not actually what happened in the District Court, Your Honor. Okay, what happened then? So what happened in the District Court is that Link Motion moved to vacate the receivership order ab initio on the grounds that the court lacked the power to enter the order in the first place because the plaintiff in the beleaguer action lacked standing. Right. The District Court concluded that it had power to enter a preliminary injunction or a receivership order under the securities laws. It did not answer the question of whether it would have ruled differently had Link Motion presented its other defenses in January of 2019. So you're not relying on the standing? I thought you were relying on the standing. If they had raised standing, that would have helped your client. That's not the basis of your malpractice action? That is not the basis of the malpractice claim. Okay, what- The malpractice claim asks a different hypothetical question, and that question is, would the District Court have ruled differently had Link Motion's other defenses been presented in January 2019 and had defendants here not waived Link Motion's opportunity to oppose the receivership order in January of 2019? But doesn't that all turn on the question of whether there was standing, and that's a federal question? It does not turn on the question of whether there was standing. But there's no malpractice in not raising a claim if it's meritless. Link Motion had other defenses beyond standing that would have resulted in a different outcome. What else? So the other defenses are that as a result of the plaintiff's lack of standing to assert derivative claims on state law claims in the Baliga case, he had only claims for money damages of less than about $28,000. And a District Court evaluating- That depends then on standing. That argument you just made depends on whether there's a standing argument, or have I misunderstood you? That argument depends on the plaintiff in the Baliga's action standing to assert state law derivative claims, which the Baliga court ruled he did not have standing. Ultimately, his claims as of January 2019 were what he stated in the second amended complaint, which were direct claims for money damages only, for an amount of damages of less than $30,000. And on those facts, a District Court would not have granted a preliminary injunction. The District Court said in its later ruling in March of 2022, adopting an important recommendation, that Baliga had standing to bring his derivative security claims. So that would justify the receivers, right? Or am I missing something? We contend that it would not. In combination with the other facts that his money damages are the only damages he was entitled to seek, and those damages amounted to less than $30,000, a District Court would not have granted a preliminary injunction or receivership motion on those facts. And Judge Morrero, in his August 25th, 2022 decision, 2022 West Law 3699339, expressly stated that he declined to consider Lake Motion's other defenses when adopting Judge Freeman's report and recommendation. And that's at Pennsite Star 4. What are the other defenses? You mentioned this one, although I agree with Judge Radja. The first words out of your mouth when I asked you what your other defenses were, if there was no standing, his damages would have been limited to $28,000. I don't understand how you can say that doesn't relate to standing. The premise of your argument is if there was no standing. But maybe I'm missing something. Judge Morrero specifically refers to the argument that plaintiff's federal securities claim could not show a substantial likelihood of success when they were later dismissed for failure to plead purchases. And he declined to rule on that issue. Had that defense been presented in the first instance in January of 2019, the district court would have ruled differently. That's the hypothetical that the malpractice claim presents here. And the district court declined to rule, has not ruled on that issue. And so the malpractice claim is seeking an entirely separate success. Let me ask you about the statute of limitations question. The malpractice you're alleging here is the entering of the stipulation, not opposing the order, the term, right? That is correct. So that's the accrual date for the malpractice action, right? The statute of limitations for the malpractice action is told by the continuous representation doctrine. How can it be told if your whole argument is D.L. Piper never represented your client on this? It should not have been represented. How can you rely on the continuous representation doctrine? Our argument is that relate. If they entered that order, the malpractice, then according, I think, correct me if I'm wrong. They don't represent us. We didn't tell them to do this. And this was malpractice for them to do this. But then you want to rely on the continuous representation doctrine to toll it? That argument- There's no relation. The whole idea of the continuous representation doctrine is that they're representing you, and you don't want to disturb that relationship. That's the whole concept, right? That argument is actually defendant's argument here. Our argument is that D.L.A. did represent Link Motion Incorporated. They undertook that representation by appearing in federal court on behalf of the client and submitting papers to the court that would affect an order on behalf of the client. Your argument is that was unauthorized, right? No. That is not our argument. They were- Your client authorized them to represent you in that matter? Our client authorized them to represent them in that matter. By simply remaining silent and not answering their questions to you and their requests for instructions and so forth, you say that you authorized them to represent you by simply not saying anything, not doing anything? It's not our contention that Link Motion did nothing. There were obviously communications between counsel and client, and they're reflected in the record, including the February 4, 2019, email and telephone communication, which was the first point in time when D.L.A. stated its intention to withdraw. Your Honor, a New York law is clear that when an attorney steps into court- Where's your allegation that they were representing us in that matter? Where is that allegation? We've cited that in the record. We've also cited case law. No, not case law. You're standing up here and saying that you're entitled to this tolling because they were representing us in this matter. My question, where is that? Where did you say they were representing us in this matter? You're referring to the complaint specifically, Your Honor. I don't want to waste your time. Do it on rebuttal. I don't want to- I'll answer that question on the rebuttal, but I would also like to refer to the case law. We cited in the papers that stand for the proposition that an attorney who appears on behalf of a client in court is representing that client, and specifically, a defense counsel who appears in court has a duty to assert affirmative defenses or otherwise preserve them. We cite the Bennett v. Mukasey case. I would also refer the court to the in repaying- I didn't understand that to be your argument, though, as to where counsel was deficient. I thought you were taking the view that they didn't tell you you had defenses, and that might have affected how you responded or didn't respond to them. Did I misunderstand? That is also part of the malpractice claim. They had a duty to advise the client of their affirmative defenses. Well, that's where the client is not communicating with the lawyer despite the lawyer asking for communications. You're saying the lawyer has to say, please let us know what you want to do. No answer. Please let us know what you want to do. No answer. By the way, we think you have the following defenses, and that a failure to do it under those circumstances is malpractice. Why isn't the lawyer entitled to wait until the client responds to him, arrange some kind of a meeting or a conference call or whatever, and then discuss things? But why is the lawyer obliged to, as you say, alert the client to defenses when the client is ignoring the lawyer's requests for communication? Well, first of all, Your Honor, it's a question of fact as to whether there was no communication here, and that question of fact can't be resolved on a motion to dismiss. It's a question of fact as to- Whether there was no communication or non-cooperation here. Why is it a question of fact? They've pleaded that they were ignored when they, or I thought it was undisputed that they were ignored. You haven't pleaded that you didn't get their communication or any reason why you wouldn't have responded. How is it a question of fact? The complaint here does not allege that there was no communication or non-cooperation. The complaint alleges that there would have been communication and cooperation if our client had received advice as to how to proceed. Ultimately, what happened here is counsel stepped into court, they signed away their client's right to oppose a motion, and now they're claiming that that was the moment in time when their representation ceased. That's not the law. Clients have a duty to preserve their client's defenses and rights, even when they have grounds to withdraw. And that's the Bennett v. Mukasey case that we cite in our papers, and I'll also cite Inree Payne, 707 F3-195, Pennsite 217, 2nd Circuit, 2013. Ultimately. Thank you. We'll hear from Ms. Hart. Thank you, Your Honors. Nancy Hart, Gibson Dunn, on behalf of Defendant O'Powleys. Your Honors have it exactly right in the questioning. We think there's a rising in jurisdiction here because this is nothing more than a collateral attack on a district court's decisions, prior decisions that considered and rejected the very argument that link motion claims DLA should have raised. There's a rising in jurisdiction because the plaintiff is asking a state court to sit in judgment of existing, not hypothetical, but existing decisions, and they're in the hopes that they could get a different outcome or a separate fight of the argument. I'm going to read Justice Roberts' opinion in Gunn a little differently perhaps than my colleagues, than indicated by my colleagues' questions, because it seems to me that what the Chief Justice is saying with respect to the third factor is that the question is not whether the issue is substantial as between the parties, which will always be true, but whether it's substantial as to the federal system as a whole. And in the discussion, Justice Roberts said that the mere possibility that a state court might rule differently from the way a federal court would rule and might rule incorrectly on an issue of federal court doesn't really matter all that much because the federal courts will recognize that that was a state court decision, which doesn't carry weight on issues of federal courts, and federal courts will simply disregard the decision, even if it was inconsistent with what federal courts recognize to be the law. So I understand the import of the Gunn decision is to want to restrict quite drastically the inclusion of cases like this, malpractice cases, upon a case that was within federal jurisdiction and say that no, they are not within federal jurisdiction merely because a state court might decide the federal law question differently from what the law is and the way the federal courts would decide it. It has to be that such a decision would really throw a monkey wrench into the operation of the federal system. So what do you say in answer to that as to what the meaning of the Gunn case is with respect to the third and the fourth factor? Thank you, Your Honor. I think this is quite distinct from Gunn, right? Gunn was dealing with your typical malpractice case. Well, I know it's distinct from Gunn. I didn't say it's not distinct. I'm talking about the standards that were laid down by the Chief Justice's opinion in Gunn, not the facts of that case. Yes, of course. And because when they were assessing the substantial factor, that's the third factor, and the fourth factor, which is the federal-state balance, they said it doesn't matter in that case. Just because a state court is going to look at other federal authority and say, oh, how would a federal court decide this issue? Just because a state court is going to make interpretation of federal law, that doesn't give rise to a rising in jurisdiction. Otherwise, as Gunn recognized, all malpractice cases that had a federal issue underlying it would be in federal court. The something more that Gunn required, the something more that Judge Roberts indicated, is because this isn't a hypothetical. This isn't a situation of, well, what would have happened? I'm going to look at these other cases and interpret. This question has already been asked and answered by the federal judge. So it's not a hypothetical. It's an existing decision. But why doesn't that mean that the malpractice action goes to state court? I mean, it's traditional that the state governs its licensed professions and decides what constitutes malpractice. They argue, they didn't tell us about this standing defense. And you say to the state court, the federal court has already said there is standing here. Therefore, it can't be malpractice. And the state court then decides whether it can or cannot be malpractice under their system not to tell the client about that. But they don't second guess the federal court on the standing question. Why shouldn't the malpractice action be decided by the state court? Well, because, again, you would hope that the state court would hew closely to the district court when deciding the causation element. So the but for causation. If they had done this, what would have happened? Because it's already answered. It's already been answered. But it is the very premise of the action in state court that sets a state court and a federal court against each other, which really is anathema to respect and dignity. I'm sorry, go ahead. In a non-controlling decision by the state court with respect to that federal principle. Although it would be giving a roadmap to litigants who, unhappy with the decisions that were issued against them in federal court, see an opportunity to go to state court to seek the exact same relief and avoid- You're saying that a state trial court would ignore what happened in the federal court, the appellate division would ignore it, and the New York Court of Appeals would ignore it. I mean, that presents always a risk when you go to state court and raise a claim that has been decided against you in federal court. The state courts throw them out routinely. Again, I think the difference here is that the premise of the suit, they will not prevail, they cannot prevail unless a state court sits in judgment and says, the federal court got it wrong with this same litigant on the same issue. I know, but that would not invalidate the order. The state court, even if that were to happen, the federal order would stay in place. So it's not affecting the order, right? Yes, that's correct. Just in terms of whether or not that undermines just that conclusion alone, which would be contradictory, his argument, he said that there were various arguments and defenses that were not made that could have been made, and therefore, even if the state court determined that the receiver order would not have been entered if D. L. Piper had done X, Y, and Z, that doesn't say anything other than that if these things were raised, which weren't raised, then that doesn't create any federal question. It's just they weren't raised, and that was malpractice. It doesn't question what the federal court did. The federal court had what it had before it, which was a stipulation. And the Gunn opinion expressly contemplates the possibility that the state court might decide an issue of federal law contrary to federal law and says, well, that doesn't really matter because federal courts will recognize that that opinion was made by a court that doesn't have jurisdiction to interpret the federal law. We interpret the federal law, and the state court might well impose liability on a law firm for having failed to do something, which they couldn't do or wouldn't be proper to do under federal law. But that doesn't mess up the federal system as the opinion lays down as a standard should be required to bring that case into federal court. Your Honor, I understand the distinction you're trying to make, but here the difference is this isn't a state court maybe getting it wrong. This is when there is the same litigant on the same issue that has already been decided, and they're trying to get a second- How does that mess up the federal system? Because it is- As Judge Bianco was just saying, if the state court said, oh, there never should have been a receivership, shouldn't have been permitted, federal law doesn't allow it, but the receivership will nonetheless continue. Yes, you're true. You set a roadmap. Yes, a roadmap to the litigant to go to federal court and say, this must be wrong. You have to set aside this receivership because the state court said it wasn't proper. And the federal court would say, well, I'm sorry. We think it was proper, and the state court's entitled to its opinion, but it doesn't affect federal law because it's not a federal precedent. I understand, although, of course, in this situation, they also are seeking the same recovery, right? They're seeking return of the receivership fees. And the court, Judge Marrero, already said in his order, I believe that these fees were appropriately assessed. So, in fact, there would be, assuming that a state court would disagree, because, again, they would be sitting in judgment of a decision that already existed, which I thought was the Second Circuit's job, not a state court's job, but there would be two contradictory decisions. And, again, it isn't- But they're seeking recovery of the fees as damages for the malpractice. Isn't that the distinction, though? They are seeking- So, again, if there was a malpractice where there could have been arguments and defenses that were raised that weren't, and they prove in state court that the order wouldn't have been issued if those arguments were made, then recovery of the fees is damages. That's not-again, that, to me, does not suggest that Judge Marrero made any mistake in his ruling. It's just saying that D. L. Piper's on the hook for that, right? Well, again, what we heard on argument about these other arguments is the first time that's ever been raised. It's not in the appellate papers. It wasn't below.  I was going to ask you also, I don't think there's ever been a case, maybe you can correct me if I'm wrong, in a malpractice where we have concluded that there's federal jurisdiction over a malpractice action, right? This would be the first time ever the Second Circuit has concluded that, right? The Second Circuit has not addressed this particular circumstance before. I'm going to ask you a much broader question. We have never determined under this test that some malpractice action, under the Grable gun test, that some malpractice action, which are obviously traditionally state court cases, should remain in federal court. We have never found a malpractice action under this test, under any circumstances, should remain in federal court. That is accurate. There is not a malpractice case under Grable gun in the Second Circuit that has had a rising in jurisdiction because it is so atypical. This is such an atypical malpractice case because usually you are asking the hypothetical, what would have happened? Here we know what would have happened. That's the difference. That's the something more. We don't know what happened because you said there's all types of things they would have raised that the district court never addresses. Well, I would point the court to actually what the complaint says. So the complaint alleges this is a standing issue. If you had raised the standing issue, then things would have been different. And then they say, generically, and other defenses. However, I would be clear that there's more than just Judge Moreau's decision saying, I have federal, I would have, he could have asserted federal derivative claims, and I would have appointed the receiver, and I think the receiver's done a good job. There's also a decision in 2019 where, again, same counsel tried to challenge and say there wasn't enough grounds, there wasn't consent, and there weren't enough grounds for the court to have issued a plenary injunction and appointed a receiver. And Judge Moreau said, I disagree. I have looked at the record. I think this is the kind of situation where there's blatant looting going on at the company to impose a receivership. So he has said again and again, and I know I'm out of time, but if your honors have any questions about statute of limitations, I'm also happy to answer them. Thank you, Ms. Farber. Mr. Maloney, you have two minutes. Thank you, Your Honor. I'd like to first address Judge Bianco's question about representation, and I'd like to direct Your Honor to appendix page 37, paragraph 74, of the complaint in which plaintiffs allege defendants undertook to represent and defend the company in the derivative action by, inter alia, appearing in and making submissions to the court on behalf of the company. So plaintiffs did, in fact, allege a representation. And on the issue of what defenses, she said you only relied on standing. What did you complain? Did you only rely on standing? That's not accurate, Your Honor. In the complaint, and specifically paragraph 78 on pages 37 and 38 of the record, we discussed standing under Cayman Islands law. We also discussed the defense that Belega in the Belega action failed to state all the elements of the cause of action of the securities law in its original complaint. We also identified the defense that- The federal court never looked at that issue. The federal court did not look at that issue. In fact, the decision, the August 25th decision that I cited at Penn Site 4, expressly declined to look at that issue. And therefore, it has not been resolved by the district court, and it is a hypothetical, a viable hypothetical for the malpractice claim. I'd like to also, if you have no further questions on the defenses, I'd like to also address this idea that somehow the malpractice claim is a collateral attack on the prior orders. As the gun court recognized, it's virtually impossible for a malpractice claim, a backward-looking hypothetical malpractice claim, to have some sort of impact on federal court. Your arguments would, if they prevailed, would lead a law firm that learns of an action of this nature filed against a former client when the former client is located distant and may not be immediately responsive. It would induce the law firm to say, well, it's their business. They haven't paid our last bills, and we've learned about this suit. And one possibility for us would be to go to the court and try to hold things up until we can get instructions from the defendant and see what the defendant wants to do and just try to protect, to try to put things in a stance. Or we can just, it's not ours, it's not our business. We can just sit back and let the defendant default, whatever. There would be a strong inducement to say, we're not going to do anything to try to make a stopgap to try to help our client. Would that be a good thing or a bad thing? I actually think the case raises a slightly related but different issue. The question is, if a law firm decides to step in and try to help its client, can it do so by half measures? Can it tell the court that it has consent but it does not? They're unpaid as to their prior representation, and they're supposed to do a lot of research and look up defenses and send their client gratuitous in the sense of unpaid for advice about what defenses they can raise. I mean, they could be spending $15,000, $20,000, just like that, to advise the client about defenses. You don't just know defenses off the top of your head. You've got to research and do a lot of work. So that's what they must do. They should consider whether they want to undertake a representation when they haven't been paid on the prior bill. But if they choose to undertake the representation, they must meet the standards required of New York attorneys. They didn't choose to undertake the representation. They chose to go to court to try to protect the client against default while they wait for the client to take steps on its own to provide for representation, which might be another law firm coming in and saying, okay, we got this. You guys can go away. Thanks. Our position is that under New York law, by going to court, appearing on behalf of the client, and submitting papers, that is choosing to represent the client. And an attorney in that circumstance cannot do so by half measures. They must meet the standards required under New York law. They also should not misrepresent to the court that they have the consent of their client when really they have nothing from their client. And they should not in doing so. What did they say to the effect that they had the consent of their client? What happened here is the defendants wrote to the client and said, if we do not hear back from you, we will assume we have your consent. But they did not tell the district court that they assumed they had the consent of their client. They told the district court that they had their consent. If we do not hear back from you, we will assume that we have your consent to what? To waive. To withdraw. No. To waive their right to oppose the preliminary injunction motion. Withdrawal came a month later. But that's because preliminary TROs are heard expeditiously. And so they are trying to find out from you, the client, what your position on this is. And am I correct that they did not hear from your client before the court was prepared to act? Counsel here, defendants here, did not hear back from the client before the court was ready to act. But what they did over and above that was they told the court that they did have their client's consent. They should have told the court they did not have their client's consent. Or they should have presented defenses. You can't misrepresent to the court that you have your client's consent. All right, let me ask you a practical question. Assuming we take the view that the malpractice action goes to the state court, your argument for why it was malpractice was because they did not tell you that there was the possibility of a standing defense? Our argument is twofold. Defendants did not advise the client that there were the defenses that I mentioned in paragraph 78 of the complaint. Standing and other defenses, right? Standing and other defenses. Okay, so you didn't tell them standing because the other defenses, we don't know what they are. Standing, you didn't tell them, they didn't tell you you had a standing defense. And then what? They did not present those defenses to the court. Or they did not tell the court that they did not have their client's consent to waive their opportunity to oppose the motion. Nevertheless, since then, apart from the consent, federal judicial officers have found there was standing. What do you argue in the state court? Other defenses would have been successful? No, no. Forget the other defenses, which you haven't identified one of. What is the standing argument to the state court for their failure to tell you about standing when it's been decided that there was standing by federal judges? One of the other defenses on standing is that the plaintiff in the beleaguer action did not assert his securities claims derivatively. Stick with me for a moment, just bear with me. What's your argument in the state court on the failure to tell you about a possible standing defense? Why is that malpractice, given that the state federal court has found standing? Let's be clear about what the federal court's found. The federal court found that the plaintiff had standing under the securities laws. Just tell me what your argument in the state court is. I'm trying to do so. The federal court found that plaintiff could have standing under securities laws to request the provisional equitable relief. The federal court found that plaintiff did not have standing under state law, and therefore he could not assert his state law derivative claims. On those claims, that presented a complete defense to those derivative claims. And without the derivative state law claims, the beleaguer plaintiff had only direct claims for money damages, which ordinarily would not merit entry of a provisional. There were no federal derivative claims? Weren't there federal derivative claims? There's a dispute as to whether the federal claims were asserted derivatively or not, and Judge Molero The district court concluded, right? No, the district court declined to hear that issue. Judge Molero declined to hear that issue at Penn site 4 of his August 25th decision. What Judge Freeman found in her report and recommendation is that the federal court had power under the securities laws to enter the preliminary injunction and appoint the receiver. Neither judge addressed the issue of whether the beleaguer plaintiff actually asserted derivative claims under the securities laws. Our position is that those claims, the derivative claims, were asserted under state law. All right, thank you. I will reserve the decision. Appreciate you coming in today.